Good morning, Your Honors, and may it please the Court. We have a case here where we're not disputing, neither I nor the government, that Ms. Brazell's matter was within Japanese primary jurisdiction. Nobody has disputed that Japan did not waive that primary jurisdiction, and there's no indication of the record that the government complied with its requirement pursuant to the agreed minutes to the Japan-U.S. Status Forces Agreement to inform Japan that a service member had committed an offense within its primary jurisdiction. What we are disputing here today, instead, is whether or not the word jurisdiction really means jurisdiction, and the word rule really means rule. There are two lines of cases which both parties have cited before this Court. The first, Patterson, Burt, and Laird, allege a defect in a foreign sovereign's jurisdiction caused by a SOFA. Patterson dealt with an alleged Korean jurisdiction. Burt and Laird dealt with an alleged German defect in jurisdiction caused by a SOFA. Those cases all held that the American remedy for that defect was diplomatic, but that the appellant in those cases, or the applicant in those cases, should raise the defect before the courts of that jurisdiction, and that it was not the place of the United States Court to rule on the jurisdiction of Korean or German courts. On the other hand... Or to resolve a dispute between the two members to the SOFA about who was going to assert jurisdiction. Your Honor, if there is a dispute there, as I indicated, that involves both parties. Here, there was no dispute because the United States never informed Japan in the first place. I was just kind of trying to clarify or complete your summary of Patterson's holding. Yes, Your Honor. There's a second line of cases dealing with an alleged or real American defect in jurisdiction caused by a SOFA, and those are Green, Cody, Stokes, Youngsburg, Thomas, and Chosnard. With the exception of Chosnard, all those cases held that a SOFA is in fact jurisdictional, and where there is a jurisdictional defect, be it caused by double jeopardy, or in this case, failure to obtain a SOFA waiver, the United States may not exercise its jurisdiction. Only Chosnard held that a jurisdictional defect isn't really jurisdictional, and Chosnard, in a two-paragraph holding that really was the Air Force Court of Criminal Appeals in an unreported case, didn't extensively consider because the charge, theft, was a minor charge versus the attempted sexual assault with which that case dealt, relied on Murphy, Ponzi, and Solerio. What I'm confused by is it seems that the court martialized jurisdiction under the Constitution and the Uniform Code of Military Justice, and then under SOFA, there's concurrent jurisdiction for the type of alleged crime at issue here. So, and then I understand when there's concurrent jurisdiction, there is supposed to be, you know, some kind of conference and no waiver by the government of Japan to exercise jurisdiction, but I don't understand how the absence of that waiver actually deprives the military court here of its concurrent jurisdiction. Well, a couple points, Your Honor. In both Youngsburg and Thomas, the military courts held quite explicitly that in Youngsburg, because the accused, Note 5 in that case, was actually in American physical custody. He was held at the confinement facility in Mannheim, Germany, which is an American confinement facility, but that Germany had not waived its jurisdiction. He was, quote, beyond the jurisdictional reach of the government until Germany released its primary jurisdiction. That's why the Youngsburg court held that the RCM 707 speedy trial clock didn't begin to run until Germany released its... Right, right, exactly. So the issue in that case was really the speedy trial clock. Well, the issue... That's the problem we've got. So when you started at the top of your argument and you said, we're here today to talk about when jurisdiction means jurisdiction, of course you appreciate we have a lot of case law where that term is used imprecisely. The judge in this case, the district court judge, thought that you were conflating, you know this, right, concurrent jurisdiction with exclusive jurisdiction, or primary jurisdiction with exclusive jurisdiction. Could you go to that point, please? Yes, Your Honor. Concurrent jurisdiction in this case and in another case that's recently considered by the U.S. Supreme Court, the Indian Child Welfare Act, doesn't mean both sovereigns may exercise jurisdiction. Well, not at the same time. But I didn't hear you push back on Judge Song's premise, which is that there's concurrent jurisdiction in this case. Both of these nations criminalized the conduct your client was convicted of, right? Correct, Your Honor. So do you... Am I correct in understanding that you're not disputing there's concurrent jurisdiction? I'm not disputing there's concurrent jurisdiction, but concurrent jurisdiction, as with the Indian Child Welfare Act, doesn't mean both sovereigns may exercise... Not at the same time. And so if we have agreement that there's concurrent jurisdiction here now, the next step is, per Judge Song's question, sort of who gets to go first? And I certainly read this agreement to contemplate that there's going to be notice given to, in this case, Japan, and that didn't happen here. But I'm struggling, I think as Judge Song is, to figure out why you think that means that the military court in this country was deprived of subject matter jurisdiction. Well, the government admits that the SOFA gives Japan, quote, a right of first refusal. And in my reply brief, I cited to the holdings of foreign courts, both Japan and under the NATO SOFA, where, in fact, those courts held that an attempt to exercise secondary jurisdiction without a waiver of primary jurisdiction voids the exercise of jurisdiction, simply because both sovereigns cannot exercise jurisdiction, rules are mandatory undertakings, and absent a waiver, you cannot exercise... Do you have any binding authority to that point? Binding on us? That the action here would be void? That the action here would be void? For failure of Japan waiting? The example that I gave in discussing Netherlands v. Short and then United States v. Short indirectly shows that the United States does not treat an exercise of secondary jurisdiction as anything other than void, because then if there had been an exercise of secondary jurisdiction which were not void, that would mean that the NATO SOFA's double jeopardy. Has Japan demonstrated any interest whatsoever in exercising jurisdiction over your client? I mean, to my knowledge, no, because they haven't been told. They were not informed pursuant to the U.S.-Japan SOFA that my client had, that the United States contemplated exercising its secondary jurisdiction, or that he had committed an offense within Japan's primary jurisdiction. Do you have... I'm sorry, go ahead. Was the United States required to notify Japan that it was exercising jurisdiction? Yes, Your Honor, pursuant to the agreed upon minutes to the U.S.-Japan SOFA. Right, under that. And what's the enforcement mechanism for that? That there was no notification, Your Honor? Yeah. If there's no notification, what does it say? I mean, the fact that there's no notification, the enforcement mechanism, it's a question of whether or not Japan then waived its jurisdiction, which it didn't. And because Japan didn't waive its jurisdiction, the exercise of secondary jurisdiction was void. Okay, go back to that. That's what I was trying to poke on. Your strongest authority for the notion that because Japan didn't waive, I appreciate your argument that they weren't given notice, so that's why they didn't waive, and I appreciate Judge Wardlaw's point. I don't think we have anything in the record here that indicates that Japan is objecting. But you're taking this other position, which is, I think, the crux of your argument, which is that because we don't have that waiver, the conviction is void. What's your strongest argument? Well, Your Honor, this court's holding in the United States v. Corrie, quote, independent nations see their exclusive control over their territory through treaties, and the terms of those agreements govern the exercise of concurrent authority. Here, the term... Corrie? Corrie's your strongest? I mean, that and the actual text of the SOFA, Your Honor, that because the United States may exercise criminal jurisdiction within Japan only pursuant to agreement, and the agreement here conditions the United States to exercise the jurisdiction upon compliance with the SOFA. Is there anything in the SOFA itself that says if Japan, that expressly states that if Japan does not give a notice or does not waive, that deprives the United States of its concurrent jurisdiction? Your Honor, the SOFA in Article 17, Subparagraph 1, subject to the provisions of this article, the military authorities of the United States have the right to exercise Japan, within Japan, criminal disparity jurisdiction. United States exercise of jurisdiction within Japan is conditioned upon the provisions of Article 17, and those provisions contain the jurisdictional provisions. It is a stretch to argue that the court in Green, for example, found that the double jeopardy provisions of the SOFA are jurisdictional, even though in other contexts, double jeopardy can be waived. That Subparagraph 8 of the same article of the NATO SOFA, which is almost identical word for word as the SOFA here, that's jurisdictional. It's a stretch to say that, well, the jurisdictional provisions in Article 7 of the NATO SOFA or Article 17 of the U.S.-Japan SOFA aren't jurisdictional, but the double jeopardy provisions are. How do you grapple with Patterson? Patterson talks about the fact that there's a different SOFA, to be sure, but we have authority there explaining that even where a SOFA purports to bestow individual rights, that's not going to be adjudicated here. There's a separate mechanism. Well, Your Honor, two things. Number one, that what Patterson was referring to was an adjudication against Korea. I fully appreciate that, but I'm not sure that makes it easier for you, so I think that might make it harder, because it does indicate that even where an individual right has been bestowed, and I don't see the individual right in this case, unless it's Japan doing the talking. Well, Your Honor, two points about that. Patterson relies on In-Re-Bert, and In-Re-Bert indicates that the Article 7 guarantee in the NATO SOFA could only be raised by a petitioner against the West German government in the West German courts. Here we've got the opposite situation, where my client is claiming a defect in American jurisdiction in an American court, and therefore, the Patterson holding should be couched by its reference to In-Re-Bert, which is very clear that it's not that this is non-justiciable, it's that it's justiciable only in the court of the nation in which the defect occurs. You argue in your briefing that you don't have a diplomatic remedy. I'm trying to figure out why you think your client is entitled to a diplomatic remedy against his own country. Well, I don't. That's what the government says. The government says that the remedy is diplomatic only. My argument is there's no such thing as a diplomatic remedy. I know, that's my point. So, counsel, that's what I just said. You're arguing and complaining that you don't have a diplomatic remedy against your own country. I'm trying to figure out why you think you're entitled to that. Why do you think your client is entitled to that, certainly pursuant to the SOFA? Well, I mean, I... Let's be set up. It does get circular, but this is just set up, it seems to me, that there's an agreement that I think absolutely contemplates that Japan would have been given notice, and that's how we decide where there's concurrent jurisdiction, and you're not pushing back that in this case there was concurrent jurisdiction. And there's a provision to decide who's primary and who's going to go first, because they're not going to exercise jurisdiction at the same time. The problem is that didn't happen here, and we keep circling back to why is it that your client thinks that your client has, it's been loosely described as standing, an individual right to enforce this? Well, because his double jeopardy right doesn't attach, unless there's compliance with the terms of the SOFA, and the SOFA says that, that in the... Yes, it's denial of a federally guaranteed constitutional right. He can bring a habeas claim, but that's not what he's doing here. Well, he is bringing a habeas claim. Not a federal habeas claim grounded in the United States Constitution, right? He's trying to argue that his... Grounded in this. That his rights arise from the SOFA. Yes, it's grounded in a federal statute in the SOFA, that his right to protection against double jeopardy is grounded in subparagraph 8, which says that word accused has been tried in accordance with the provisions of this article. And here, the proceedings were not in accordance with the provisions of the SOFA. But even Patterson said, even the double jeopardy right can't be enforced in habeas, because the agreement, the SOFA agreement, can only be enforced through diplomatic means. Where there's a provision that says any disagreements about this agreement should be resolved through this joint committee, which it seems to be an identical provision in this SOFA. Well, here there's no disagreement, Your Honor. The government concedes it was Japan's primary right of jurisdiction. So the SOFA committee really isn't relevant, because there's no disagreement. It's not the United States saying, we have primary jurisdiction, Japan saying we have primary jurisdiction. Everybody's on the same sheet of music. Japan had primary jurisdiction. That's not a question, so the SOFA committee isn't really relevant as to that point. Patterson cites the I.D.V. Robinson, which is a case dealing with an attempt to exercise jurisdiction in a foreign country, U.S. jurisdiction in a foreign country. So Patterson should be read to hold only that if you are attempting to enforce your double jeopardy right against Korea, against an attempted Korean prosecution, that your remedy is either diplomatic from the United States or in a Korean court. That's not the situation here. The line of cases that I cited that deal with an attempt to enforce the SOFA's jurisdictional provisions against the United States all hold that they are justiciable and that they are individual rights, which can be enforced. I've got eight seconds left in the time I've reserved, pending the questions of this Court. I reserve the remainder of my time for rebuttal. All right. Thank you, Counsel. Thank you, Your Honor. Mr. Wallace? Yes. Good morning, Your Honors. Dave Wallace, Assistant U.S. Attorney for the United States. May it please the Court, Counsel, I wonder sometimes if we lose the forest for the trees. In 2016, Mr. Brazell sexually assaulted a 12-year-old girl in Japan. There's no dispute that under Solario, the U.S. Air Force had court-martialed jurisdiction because he was on active duty status and the crime of sexually assaulting a kid is a violation of the UCMJ. There's no dispute about that. The only question in this case is can somehow the notice obligations under the SOFA strip or deprive the U.S. court-martial jurisdiction? There's not one case in one district court, one circuit court in the 60 years the SOFA has been in existence or the 37 years that Solario has been the rule of the land that says that. It doesn't say that. Is it correct that we don't have any indication in the record that notice was given to Japan and that there was a waiver? I think that's correct, Your Honor. And we don't have any explanation about why that didn't happen? There's one brief mention about a commanding officer being in a hurry? Well, I don't. This does seem to have been bypassed. I can speculate. To understand the context of this case, realize the victim and the defendant were on vacation in Japan. The crime wasn't even identified until they were both back in the United States. So the case was investigated in the United States. The prosecutor, the Air Force prosecutor, she was in the United States. The evidence was there. The witnesses were there. The court-martial was there. It's the same SOFA. It's the same SOFA, right. No explanation for why this was bypassed? There isn't, although I'd be guessing. Other than I think it may not have dawned on her that the SOFA was implicated because everything was in the United States. The witnesses, the parties, the investigation. And so it could have been that. It could have been that. There was notification, and there was a failure to follow up with that. And it could have been that. If you look at Japan's interest, there's no interest that was harmed. There's no Japanese resident. I appreciate that, but that would be for Japan to explain to us. I agree. Okay, so you do have an argument at footnote. I think it's your footnote four that the U.S. had primary jurisdiction because this child was a dependent. But I don't think that's correct, and I don't think you're arguing that today, but I want to be clear. Is that your position? No, I think the SOFA, as it's read appropriately, I think is that the status of the victim, if she had been a dependent of an active duty or a DOD civilian, the U.S. would have been primary. But she's not. She's not. So this footnote was a mistake, or you're not pressing this argument anyway? It's four. I think it's your footnote four, I believe. I think it's explaining. As long as you're not pressing the point today, I don't know. No, no, it's explaining sort of the unique distinction of she was a dependent of a contractor, not a DOD civilian. I appreciate her status. I just want to make sure you're not arguing today that the government had primary jurisdiction in this case. Right. Okay, so opposing counsel concedes that there was concurrent jurisdiction, and I think that's got to be the case if both nations criminalize this conduct, which they surely do. Yes, you are. Okay, and so then we're down to the difference between exclusive and primary and how the failure to give notice or obtain the waiver would affect the subject matter jurisdiction of the court here, right? Right. I think there's a standing issue that we might reach first, and that is the Patterson case, the rule of military court martial 201-D3. It's not governing. It's not dispositive, of course, on this court, but it's instructive because it directly addresses the issue of the individual defendant does not have a standing to assert a difference between the sovereigns. The rule of court martial covers that issue directly. The Shorenard case directly is on point with that as well, and that discusses Solorio. So I think the body of the RCM, the case law, the Patterson, the Ninth Circuit Patterson case, all says the criminal defendant doesn't, in effect, stand in the shoes of Japan and assert Japan's rights. Japan, if it wants to complain, can go to the joint committee and complain, and they can resolve it through diplomatic means. So I think there's a standing issue before we get to the substantive stripping away. I think that... I understand that argument. I don't mean to interrupt, but I want to, if I understand your friend across the aisle's argument, is that it's not really a standing issue because by operation of law, essentially, when the U.S. did not comply with the notice and waiver provision that deprived the U.S. of its concurrent jurisdiction, like that the U.S. couldn't exercise its concurrent jurisdiction unless it complied with that. So it kind of doesn't matter whether Brazil is enforcing it, that it's just independently enforcing, that there's just no jurisdiction here. And I think he's citing the text of SOFA and U.S. v. Corrie for that proposition, and I just want to know what your response is. Sure. I appreciate it, Your Honor. Okay. I think that the text of the SOFA is clear. It's concurrent jurisdiction. It's not contingent jurisdiction. It's not exclusive jurisdiction. The U.S. will spring forward with jurisdiction if it complies with the waiver provision. The language is clear. Concurrent is concurrent. The authors and the signatories of the SOFA knew how to use the term exclusive jurisdiction. They didn't. You can't sort of read into it. It didn't say, for example, subject to. There's nothing in the SOFA that says, subject to a waiver obtained by an Air Force prosecutor from the government of Japan, unless and until that happens, the U.S. government has no court-martial authority. It doesn't say that. No, but it does say, subject to the terms of this agreement or something like that. It's pretty circular. Right. I agree. I agree. But it's not explicit. To remove court-martial jurisdiction, in other words, cancel, you know, throw it in the military to understand. We understand that court-martial jurisdiction would never be easily given up. And to think that it would be given up, we're going to agree to give up court-martial jurisdiction over a term of subject to, which is not defined, just wouldn't happen. The authors of the SOFA wouldn't have allowed for that. The SOFA doesn't say that. So on its face, it just doesn't provide for that. It's a... Counsel, I'd like to ask you to turn your attention to paragraph 6B. Is there anything preventing the military authorities from notifying Japan now of the disposition of the case in accordance with that section? 6D. 6B. B. Oh. I think there's nothing... Because it says that you have to notify, the U.S. has to notify Japan in cases of concurrent jurisdiction of the disposition. There's been a disposition. Right. You imply that Japan's never been notified. Is this a curative step? There's nothing preventing, I suppose, the U.S. from notifying. Why wouldn't the U.S. say, oh, my bad, I'm going to notify Japan now that we've disposed of this case? I presume so, Your Honor. Wouldn't that... I mean, it seems to me that Brazil's concern is the lack of... that he's remained subject to being prosecuted in Japan, that he could be prosecuted twice for the same crime. Right. Understanding the court's question, could he be prosecuted again in Japan? So the way I read SOFA and along the lines of what you were just saying, if Japan had chosen to prosecute him, he could still be prosecuted by a court... He could still be subject to a court-martial. Good. But if a court-martial is undertaken and he's prosecuted here, can he still be prosecuted in Japan? Likely not, right? Well, I think what would happen would be this. If he was in Japan and arrested, he would go to the American consulate and there's a question about Americans arrested in Japan and the American government would look to the SOFA to work diplomatically with the Japanese government to say he can't be prosecuted again because the SOFA prevents that. That's our agreement. So he can't be prosecuted in accordance with that. But it wouldn't be his right to assert. It would be the U.S. government's right to assert the SOFA on his behalf. If the U.S. government were to give notice now of this disposition, would the U.S. government be in compliance with the SOFA? Yes, Your Honor. Any reason the U.S. government hasn't done that? I don't have an answer for that. If I understand... I don't have an answer for that. If I understand the argument, your opposing counsel's argument, I believe he's saying that Japan would not be bound by the double jeopardy provision because of the lack of compliance with the notice and waiver provision. Do you have a response to that? Nothing in the SOFA says that. The provision, paragraph 8, talks about double jeopardy. It doesn't say that. It doesn't say, but for compliance, this paragraph doesn't apply. If there are no further questions, we would ask that the district court's judge be upheld. Thank you, counsel. I'll give you a minute for rebuttal. You used all your time, basically, but you can respond. Yes, Your Honor. Just to clarify, Your Honor, if Japan had exercised its primary jurisdiction, the United States could not court-martial my client. In fact, the SOFA says that the U.S. retains its ability to court-martial. I'm not necessarily in prison for the crime, but certainly there's other sanctions that a court-martial would have for someone committing a sexual assault in Japan. Pursuant to subparagraph 8, where accused has been tried in accordance with the provisions of this article either by the authorities of Japan or the military authorities of the United States and has been acquitted or has been convicted and is serving or has served, he may not be tried again for the same offense by the authorities of the other state. Isn't that language substantially similar, maybe identical, to the language in Patterson? It is substantially similar, Your Honor. However, again, in Patterson, the claim was against Korea. I appreciate that. So it's not true that the United States could court-martial my client if he'd been tried for the same offenses in Japan. And green stands for that proposition as well, that the double jeopardy provisions of a SOFA deprive a court-martial of jurisdiction. Those same double jeopardy provisions are in the same article of the SOFA as the jurisdictional provisions. So to say subparagraph 8 is jurisdictional but the jurisdictional provisions are not is a stretch. Very briefly as well, I point again the court to the language of the discussion of 201-D3. My esteemed counsel raised that as an indication that there is plenary jurisdiction and that's not what the President said in his discussion of 201-D3. Specifically, the President said that a convening authority who wishes to exercise jurisdiction in a case where there's secondary jurisdiction must go out and seek a release of jurisdiction. He didn't say go ahead and plow straight ahead irrespective of the waiver provisions of a SOFA. Finally, I point again to my brief that Solaria simply doesn't stand for the proposition that a SOFA can't limit court-martial jurisdiction. Solaria stands for the proposition that the Constitution Due Process Clause does not prohibit exercise of court-martial jurisdiction anywhere at any place. All right. Thank you, counsel. Brazell v. Uttenberg will be submitted and this session of the Court is adjourned for today. Thank you. All rise. This Court for this session stands adjourned.
judges: WARDLAW, CHRISTEN, SUNG